IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JOSHUA AARON YOUNGER, <br><br>                 Plaintiff, <br><br> vs. <br><br> DR. JOHN WOOD ET AL., <br><br>                 Defendants. | **MEMORANDUM DECISION & ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT** <br><br> Case No. 1:18-CV-62 CW <br><br> District Judge Clark Waddoups |

Plaintiff, Joshua Aaron Younger, is a *pro se* prisoner. In his amended civil-rights complaint, 42 U.S.C.S. § 1983 (2021), filed June 19, 2019, he asserts his federal constitutional rights were breached by Defendants Wood and Ondricek's inadequate medical care. (ECF No. 14.) Specifically, he alleges Defendant Wood (1) overprescribed him 40 MG of Zyprexa "in the years . . . 2017-2018-2019," causing him "extreme weight gain . . . , obesity, heart disease and high blood pressure"; and, (2) denied him proper medication to treat mental illness and (nerve) pain. (*Id*. at 4.) He further asserts Defendant Wood colluded with Defendant Ondricek, a registered nurse, to deny him medical care.[1] (*Id*. at 5.) His request for relief seeks money damages and injunctive relief of "sufficient medical care by policy change." (*Id*. at 12.)

---

[1] As to Plaintiff's possible conspiracy claim, he was required to "specifically plead 'facts tending to show agreement and concerted action.'" *Beedle v. Wilson*, 422 F.3d 1059, 1073 (10th Cir. 2005) (quoting *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983)). Plaintiff has not met this responsibility; his vague assertions that multiple people were involved in violating his civil rights, and, therefore, a conspiracy must be involved, are not enough. His lack of detail proves fatal to this claim, which will not be treated further.

Defendants move separately for summary judgment. (ECF Nos. 33, 35.) Defendant Wood supports his motion with a *Martinez* report (including jail records; his declaration; and medical records) and memorandum. (*See* ECF Nos. 29-33.) Plaintiff's responsive evidentiary materials are: (1) his verified amended complaint, (ECF No. 14)[2]; and, (2) some irrelevant medical records, from before and after his 2017-19 stays in DCCF, (*see* ECF No. 41). Defendant argues that the undisputed facts show that he did provide constitutionally adequate health care regarding the medications he provided Plaintiff for pain and mental issues. The Court rules for Defendant.

## I. SUA SPONTE DISMISSAL FOR FAILURE TO STATE CLAIM

### A. STANDARD OF REVIEW

Evaluating a complaint for failure to state a claim upon which relief may be granted, this Court takes all well-pleaded factual assertions as true and regards them in a light most advantageous to the plaintiff. *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th

---

[2]Taken only from the amended complaint, signed May 4, 2019 (128 to 778 days after relevant events), (ECF No. 14), Plaintiff's story of his stays in Davis County Correctional Facility (DCCF), 2017-18, is one of consistently unheeded requests for proper medication. That story is at odds with Plaintiff's contemporaneous medical records from the relevant time. Indeed, Plaintiff's story is supported solely by his after-the-fact, self-serving "sworn statement," from his Amended Complaint. (*Id.*) Such statements by a nonmovant, like Plaintiff, are insufficient to support Plaintiff's allegations against Defendant. *See Sherman v. Klenke*, 653 F. App'x 580, 585-86 (10th Cir. 2016) (unpublished) ("A nonmovant can properly oppose [SJ] with affidavits [like the verified Amended Complaint], but . . . conclusory and self-serving affidavits are not sufficient."); *Boles v. Dansdill*, 361 F. App'x 15, 18 (10th Cir. 2010) (unpublished) (stating "conclusory and self-serving affidavits" do not serve as "objective evidence" upon which SJ may be based); *Thomas v. United States Bureau of Prisons*, 282 F. App'x 701, 704 (10th Cir. 2008) (unpublished) (relying on contemporaneous medical records over "conclusory and self-serving statements" in Plaintiff's affidavit); *Cahill v. Nye*, No. 99-3059, 2000 U.S. App LEXIS 2481, at *3-4 (10th Cir. Feb. 17, 2000) (unpublished) ("When 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))); *Oates v. Englund*, No. 99-1187, 1999 U.S. App. LEXIS 24645, at *3 (10th Cir. Oct. 4, 1999) (unpublished) (stating, when plaintiff "has offered nothing to support his conclusory and self-serving allegation," plaintiff's affidavit is "not sufficient to create a genuine issue of fact"). Plaintiff's verified Amended Complaint, at odds with contemporaneous medical evidence, is therefore not a valid source of "material facts" to place facts obtained from that medical evidence in dispute. Plaintiff's Amended Complaint is thus not treated as evidence here.

Cir. 2007). Dismissal is appropriate when, viewing those facts as true, the plaintiff has not posed a "plausible" right to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)*; Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556). When a civil-rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the Court considers those assertions "conclusory and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Twombly*, 550 U.S. at 554-55). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in original).

This Court must construe pro se "'pleadings liberally,' applying a less stringent standard than is applicable to pleadings filed by lawyers. Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citations omitted). This means that if this Court can reasonably read the pleadings "to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, it is not "the proper function of the district court to assume the role of advocate for

3

the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing

*Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam)).

## B. CLAIM FOR INJUNCTIVE RELIEF

Plaintiff requests injunctive relief. (ECF No. 14, at 12.) However, the Amended

Complaint itself shows Plaintiff filed it from Utah State Prison (USP) on May 4, 2019,[3]

indicating Plaintiff is no longer in DCCF, (*id.* at 14).

> "Mootness is a threshold issue because the existence of a live
> case or controversy is a constitutional prerequisite to federal court
> jurisdiction." *McClendon v. City of Albuquerque*, 100 F.3d 863,
> 867 (10th Cir. 1996). "This requirement exists at all stages of
> federal judicial proceedings, and it is therefore not enough that the
> dispute was alive when the suit was filed; the parties must continue
> to have a personal stake in the outcome." *Id.*
> "Where a plaintiff seeks an injunction, his susceptibility
> to *continuing* injury is of particular importance--past exposure to
> illegal conduct does not in itself show a present case or
> controversy regarding injunctive relief if unaccompanied by any
> continuing, present adverse effects." *Jordan v. Sosa*, 654 F.3d
> 1012, 1024 (10th Cir. 2011) (brackets, ellipses and internal
> quotation marks omitted). "Moreover, a plaintiff's continued
> susceptibility to injury must be reasonably certain; a court will not
> entertain a claim for injunctive relief where the allegations take it
> into the area of speculation and conjecture." *Id.* (internal quotation
> marks omitted). In other words, "[a] claim for equitable relief is
> moot absent a showing of irreparable injury, a requirement that
> cannot be met where there is no showing of any real or immediate
> threat that the plaintiff will be wronged again." *Id.* (internal
> quotation marks omitted).

*Burnett v. Fallin*, 785 F. App'x 546, 551-52 (10th Cir. 2019) (unpublished).

---

[3]As recently as March 17, 2021, the Court received an envelope from Plaintiff sent from USP. (ECF No. 45.)

Based on Plaintiff's move away from DCCF, Plaintiff's request for injunctive relief is moot. *See McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999). That request is therefore dismissed.

## C. AFFIRMATIVE LINK

The complaint must clearly state what each individual defendant did to violate Plaintiff's civil rights. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (stating each defendant's personal participation is essential allegation). "To state a claim, a complaint must 'make clear exactly *who* is alleged to have done *what* to *whom*.'" *Stone v. Albert*, No. 08-2222, slip op. at 4 (10th Cir. July 20, 2009) (unpublished) (emphasis in original) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)).

As to Defendant Ondricek, Plaintiff's claims lack appropriate detail, with none of the necessary context or specificity to link Ondricek to any of his allegations. Defendant Ondricek's Motion for Summary Judgment is thus granted, (ECF No. 35), and he is dismissed. The only remaining defendant is Defendant Wood.

## II. SUMMARY-JUDGMENT

### A. STANDARDS

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." *Id*. at 56(c)(1)(A). Summary judgment's purpose "is

to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

The movant has the "initial burden to demonstrate an absence of evidence to support an essential element of the non-movant's case." *Johnson v. City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998). Once movant meets this burden, "the burden then shifts to the non-movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of that element." *Id*. To do so, the non-movant must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1999) (citation omitted). In ruling on a summary-judgment motion, this Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Sealock v. Colorado*, 218 F.3d1205, 1209 (10th Cir. 2000).

To educate Plaintiff about his duty in responding to a summary-judgment motion, the Court stated in an order,

> Plaintiff is notified that if Defendants move for summary judgment Plaintiff may not rest upon the mere allegations in the complaint. Instead, as required by Federal Rule of Civil Procedure 56(e), to survive a motion for summary judgment Plaintiff must allege specific facts, admissible in evidence, showing that there is a genuine issue remaining for trial.

(ECF No. 15, at 3.) For Plaintiff's convenience, the Court also attached to its order the full texts of Federal Rule of Civil Procedure 56 and District of Utah Rule of Practice 56-1. (*Id*. at 4-6.)

## B. LAW REGARDING MEDICAL CARE FOR PRISONERS

To succeed under the Eighth Amendment, Plaintiff must demonstrate acts or omissions harmful enough to show deliberate indifference that offends "'evolving standards of decency.'"

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted). That amendment proscribes only deliberate indifference constituting the "'unnecessary and wanton infliction of pain.'" *Id.* at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion)). Moreover, Plaintiff must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to *serious* medical needs." *Id.* at 104 (emphasis added). Plaintiff has to show that Defendant's actions were more than negligent. After all, negligent failure to give sufficient medical care, even touching medical malpractice, does not equal a constitutional violation. *Id*. at 106.

  *Estelle*'s deliberate-indifference standard has an objective component asking whether the alleged deprivation is "sufficiently serious," and a subjective component asking whether the defendant official "knows of and disregards an *excessive* risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). The subjective component questions whether prison officials acted with a "sufficiently culpable state of mind." *Clemmons v. Bohannon*, 956 F.2d 1523, 1525-26 (10th Cir. 1992). "[E]ven if a prison official has knowledge of a substantial risk of serious harm to inmates, he is not deliberately indifferent to that risk unless he is aware of and fails to take reasonable steps to alleviate the risk." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). Thus, Plaintiff must show he suffered from a serious condition that Defendant knew about and ignored, and that by ignoring Plaintiff's condition, or failing to take reasonable steps to alleviate the risk, Defendant caused Plaintiff serious physical harm or the unnecessary, wanton infliction of pain.

  "'[C]ourts are generally reluctant to second guess [professional] medical judgments.'" *Maez v. Merrill*, No. 2:07-CV-986 TC, 2008 U.S. Dist. LEXIS 72842, at *6-7 (D. Utah September 23, 2008) (unpublished) (quoting *Ferranti v. Moran*, 618 F.2d 888, 891 (1st Cir.

1980)); *see Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972). Mere disagreement between a prisoner and prison medical staff as to diagnosis or treatment does not support a deliberate-indifference claim. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993); *LeDoux v. Davies*, 961 F.2d 1536, 1536 (10th Cir. 1992). Eighth Amendment violations occur only when medical treatment is so grossly incompetent, inadequate, or excessive as to "'shock the conscience or be intolerable to fundamental fairness.'" *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (citation omitted). An inmate's belief that he should have been treated differently does not show "deliberate indifference." *Scott v. Gibson*, 37 F. App'x 422, 423 (10th Cir. 2002) (unpublished) (citation omitted).

## C. UNDISPUTED MATERIAL FACTS

- At all relevant times, Defendant was DCCF medical doctor. (ECF No. 31, at 1.)

- 3/17/17   Plaintiff booked into DCCF. (ECF No. 29-1, at 1.)

- During Plaintiff's 648 days in DCCF, Defendant treated him at least 22 times. (ECF No. 31, at 8.)

- Though Plaintiff stated he had been prescribed Gabapentin[4] in past, Defendant consistently substituted Carbamazepine and Tegretol or Lamotrigine, "which are used as mood stabilizers to treat bi-polar disorder," during incarceration. (*Id*.; ECF No, 29-2, 1-45.)

- Though Plaintiff was prescribed Gabapentin at Davis Behavioral Health (DBH), Defendant instead prescribed alternative medications, "because Gabapentin is known to be trafficked and abused in the prison setting." (ECF No. 31, at 13; 31-1, at 82-91, 93.)

- Defendant consistently prescribed between 15 MG to 30 MG--never 40 MG--of Zyprexa[5] to Plaintiff during incarceration. (ECF Nos. 29-2, at 1-45; 31, at 13.)

- Zyprexa "is for the treatment primarily of schizophrenia and bipolar disorder." (ECF No. 31, at 6.) "[W]eight gain is listed as a side effect of Zyprexa," as well as "other medication that

---

[4]Prescribing information for Gabapentin. (ECF No. 31-1, at 5-41.)
[5]Prescribing information for Zyprexa. (ECF No. 31-1, at 43-78.)

Plaintiffs was prescribed," like "Propranolol," used to treat Plaintiff's hypertension, and "Carbamazepine," "used to treat Plaintiff's nerve pain complaints." (*Id*. at 6-7.)

- Defendant consistently prescribed Plaintiff ibuprofen during incarceration. (ECF No. 29-2, at 1-45.) "Ibuprofen is a drug typically used to treat pain." (ECF No. 40, at 2.)

- 3/20/17   During Plaintiff's first visit with Defendant, Plaintiff reported he was "coming off of Xanax, Roxy, and Vodka," plus daily hard liquor consumption; so Defendant put Plaintiff on "withdrawal protocol" and asked staff to "communicate with [DBH] regarding [Plaintiff's] Zyprexa dosing." (ECF Nos. 29-2, at 151, 159; 31, at 8.)

- 4/4/17   Plaintiff released from DCCF. (ECF No. 29-1, at 1.)

- 4/6/17   Plaintiff booked into DCCF, (*id*. at 2), and met with physician's assistant (PA) who restarted "Cogentin, Tegretol, Effexor, Haldol, Lisinopril, Zyprexa, and Ibuprofen." (ECF Nos. 29-2, at 153; 31, at 8.)

- 4/7/17   Defendant saw Plaintiff, prescribing treatment to pass methamphetamine he had swallowed, and increasing Plaintiff's Zyprexa from 15 to 20 MG daily. (ECF Nos. 29-2, at 149-51; 31, at 8-9.) Plaintiff saw mental-health therapist. (ECF No. 29-2, at 200.)

- 4/10/17   Defendant saw Plaintiff because of seizure after opiate withdrawal protocol enacted, so Defendant ordered Plaintiff moved to medical for night and then reevaluated. (Id. at 147.)

- 4/12/17   Plaintiff saw Dr. Campbell, asking for increased Zyprexa dose, which Campbell declined but adjusted other medications. (*Id*. at 145-46.)

- 4/21/17   PA adjusted Zyprexa dosage at Plaintiff's request. (*Id*. at 143.)

- 4/26/17   Plaintiff saw mental-health therapist. (*Id*. at 199.)

- 5/12/17   PA saw Plaintiff and adjusted Haldol dosage at Plaintiff's request. (*Id*. at 141.) Plaintiff saw mental-health therapist. (*Id*. at 197.)

- 5/15/17   Plaintiff saw mental-health therapist. (*Id*. at 197.)

- 5/22/17   Defendant saw Plaintiff, increasing Zyprexa dosage to 25 MG. (*Id*. at 6, 139.)

- 5/25/17   Plaintiff saw mental-health therapist. (*Id*. at 196.)

- 5/26/17   Defendant saw Plaintiff regarding anxiety, changing Plaintiff's medication to treat it. (*Id*. at 137.)

- 6/2/17    PA saw Plaintiff who requested stronger does of Haldol, which PA prescribed. (*Id*. at 135.)

- 6/6/17    Plaintiff saw mental-health therapist. (*Id*. at 195.)

- 6/7/17    Dr. Campbell saw Plaintiff regarding paranoia, anxiety, and night terrors, so Campbell increased Topamax and Lamictral. (*Id*. at 133.)

- 6/14/17  Plaintiff saw mental-health therapist. (*Id*. at 194.)

- 6/19/17 Defendant saw Plaintiff for "worse schizophrenia symptoms," so Defendant "adjusted his medication accordingly." (*Id*. at 131.)

- 6/21/17 Plaintiff saw mental-health therapist. (*Id*. at 193.)

- 6/23/17 PA saw Plaintiff regarding hallucinations so PA increased Topamax at Plaintiff's request. (*Id*. at 129.)

- 7/10/17 Defendant saw Plaintiff, who said he was feeling better and requested medication adjustment, which Defendant did. (*Id*. at 127.) Plaintiff saw mental-health therapist. (*Id*. at 192.)

- 7/27/17 Plaintiff saw mental-health therapist. (*Id*. at 191.)

- 7/31/17 Defendant saw Plaintiff and increased certain dosages. (*Id*. at 125.)

- 8/8/17    Plaintiff saw mental-health therapist. (*Id*. at 190.)

- 8/21/17 Defendant saw Plaintiff for allergic reaction or infection and adjusted his antibiotic. (*Id*. at 121.)

- 8/23/17 Plaintiff saw mental-health therapist. (*Id*. at 189.)

- 9/1/17    Defendant saw Plaintiff, who reported he had passed out and fell, so Defendant prescribed Lamotrigine and ordered bottom-bunk assignment. (*Id*. at 119-20.)

- 9/6/17    Plaintiff saw mental-health therapist. (*Id*. at 188.)

- 9/22/17 Defendant saw Plaintiff, who reported seizure and asked for medication review, so Defendant reviewed medications and decided no change appropriate. (*Id*. at 117.) Fours later, Defendant saw Plaintiff again, who reported hallucinations, so Plaintiff ordered Lamictal level be drawn. (*Id*. at 115.)

10

• 9/27/17   Dr. Campbell reviewed Lamotrigine level and increased Plaintiff's dose. (*Id*. at 113.)

• 10/6/17   Plaintiff saw mental-health therapist. (*Id*. at 187.)

• 10/11/17 Dr. Campbell saw Plaintiff and noted his increasing weight, so Campbell ordered his weight checked every two weeks, increased his Haldol, and adjusted his Zyprexa from 25 MG in evening to 5 MG in morning and 20 MG in evening. (*Id*. at 109.)

• 10/26/17 Plaintiff saw mental-health therapist. (*Id*. at 186.)

• 11/9/17   Plaintiff saw mental-health therapist. (*Id*. at 185.)

• 11/22/17 Plaintiff saw mental-health therapist. (*Id*. at 184.)

• 11/30/17 RN saw Plaintiff, who requested increase in Zyprexa, but RN did not increase Zyprexa, though he adjusted other medications. (*Id*. at 103.)

• 12/27/17 PA saw Plaintiff for seizure and added propranolol dose. (*Id*. at 99.)

• 1/2/18     Plaintiff saw mental-health therapist. (*Id*. at 183.)

• 1/26/18   Defendant increased Zyprexa dosage from 25 MG to 30 MG. (*Id*. at 95-96.) Plaintiff saw mental-health therapist. (*Id*. at 181.)

• 2/12/18   PA saw Plaintiff for seizure and increased his Lamotrigine dosage. (*Id*. at 93.)

• 3/1/18     RN reviewed Lamotrigine level. (*Id*. at 91.)

• 3/16/18   PA increased Effexor dosage. (*Id*. at 89-90.)

• 4/2/18     Plaintiff saw mental-health therapist. (*Id*. at 181.)

• 4/9/18     Defendant increased Plaintiff's propranolol dose at his request. (*Id*. at 85-86.)

• 4/30/18   Defendant saw Plaintiff who complained about medications and weight gain, so Defendant reviewed medications with him; consequently, Plaintiff agreed he was doing well on regimen, to treat weight gain "with diet and exercise," and to continue Zyprexa. (*Id*. at 83.)

• 5/16/18   Plaintiff saw mental-health therapist. (*Id*. at 180.)

• 6/4/18     Defendant saw Plaintiff and adjusted his Effexor medication. (*Id*. at 77.)

• 6/5/18     Plaintiff saw mental-health therapist. (*Id*. at 179.)

• 6/18/18   Defendant saw Plaintiff for a rash and prescribed Benadryl. (*Id.* at 75-76.)

• 6/22/18   Plaintiff saw mental-health therapist. (*Id.* at 178.)

• 6/27/18   Dr. Campbell discussed Plaintiff's weight gain with him; Plaintiff stated, "I would rather be lucid than suffer with the mind. I know the risks with the weight." (*Id.* at 73.) Campbell ordered lab tests but did not adjust medications. (*Id.*) His "pscyh meds" were noted to be Haldol, Effexor, Lamictal, Topamax, Zyprexa, benztropine, and propranolol. (*Id.*)

• 7/2/18   Defendant reviewed Plaintiff's lab results and adjusted medications. (ECF Nos. 29-2, at 71; 31, at 12.)

• 7/11/18   Plaintiff saw mental-health therapist. (ECF No. 29-2, at 177.)

• 7/26/18   Plaintiff saw mental-health therapist. (*Id.* at 175.)

• 8/7/18   Plaintiff was found to be diverting his medications, so his medications were discontinued. (*Id.* at 69.)

• 8/14/18   Defendant restarted Plaintiff's medications. (*Id.* at 67-68.)

• 8/29/18   Defendant ordered Plaintiff's Effexor and Zyprexa be crushed to ensure he could not divert and sell his medications to other inmates for food. (*Id.* at 65.)

• 9/6/18   Plaintiff saw mental-health therapist. (*Id.* at 174.)

• 10/2/18   Defendant saw Plaintiff, diagnosed gall-bladder disease, and ordered special diet. (*Id.* at 55-56; ECF No. 29-3, at 21.)

• 10/4/18   Plaintiff saw mental-health therapist. (ECF No. 29-2, at 173.)

• 10/17/18   Plaintiff saw mental-health therapist. (*Id.* at 172.)

• 10/29/18   Defendant saw Plaintiff and adjusted his propranolol dosage. (*Id.* at 53-54.)

• 11/8/18   Plaintiff saw mental-health therapist. (*Id.* at 171.)

• 11/15/18   Plaintiff saw mental-health therapist. (*Id.* at 170.)

• 12/4/18   Plaintiff saw mental-health therapist. (*Id.* at 169.)

• 12/7/18   PA saw Plaintiff and adjusted his diet to low fat. (*Id.* at 49.)

• 12/11/18 Defendant saw Plaintiff and adjusted his diet. (ECF Nos. 29-2, at 46; 31, at 13.)
         Plaintiff saw mental-health therapist. (ECF No. 29-2, at 168.)

• 12/19/18 Plaintiff saw mental-health therapist. (ECF No. 29-2, at 167.)

• 12/27/18 Plaintiff released from DCCF. (*Id*. at 2.)

## D. ANALYSIS

Based on undisputed facts--supported by over 580 pages of medical records and declarations that the Court has thoroughly reviewed--(1) Plaintiff's specific allegation of receiving 40 MG of Zyprexa (and his blaming of that particular dosage for his weight gain and related health problems) is flat-out false; and, (2) Defendant cannot possibly be termed deliberately indifferent to Plaintiff's need for medications for mental illness (Zyprexa and many others shown in the fact section) and pain (Carbamazepine and ibuprofen). To the contrary, Defendant either met with Plaintiff himself, or Plaintiff was treated by another medical or mental-health provider, about 59 times[6] during the nearly 22-month period at issue here. That averages out to a medical or mental-health encounter every 11 days. At each visit, active treatment of some kind took place--i.e., prescriptions were reviewed, adjusted, authorized and dispensed; and therapy was provided. And this is only as to the issue of Plaintiff's mental-health and pain treatment. Plaintiff's medical records included in the *Martinez* report show that he was also treated by other doctors, PAs, nurses, and providers during that period, for other issues, each leaving notes as to symptoms, observations, and treatments carried out.

Far from "deliberate indifference"--"the unnecessary and wanton infliction of pain"-- the record over plentiful sick visits shows Defendant (and other medical providers) ensuring

---

[6]At least 22 of these times--or an average of once per month--was with Defendant.

treatment for medical and mental health issues *every time* Plaintiff asked. *Estelle*, 429 U.S. at 104 (quotation marks & citation omitted). It may not have been the exact medication or dosage or other treatment that Plaintiff wanted, but the medical care was uniformly adequate in that Plaintiff's expressed need for help with pain and injury was consistently met by Defendant. *See Olson*, 9 F.3d at 1477 (indicating "difference of opinion" as to diagnosis and treatment not enough to show deliberate indifference).  Plaintiff disputes this, but his allegations are entirely unsupported.

Plaintiff's point really is that he, an unqualified layperson, wanted more or different treatment (for example, what he received from DBH) from this medical professional defendant-- not, as must be shown to prevail, that Defendant, with full knowledge of deleterious effects of his actions or inactions, outright ignored or even exacerbated Plaintiff's serious medical needs (assuming Plaintiff's needs were serious). *Id.* at 107 (stating, when inmate contended "that more should have been done by way of diagnosis and treatment" and "suggest[ed] a number of options that were not pursued, that was "classic example of a matter for medical judgment . . . and does not represent cruel and unusual punishment").

As a matter of law, offering treatment based on a professional's medical judgment, even if it is not what an inmate wants, does not rise to the level of deliberate indifference. *Self v. Crum*, 439 F.3d 1227, 1232-33 (10th Cir. 2006) ("[T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment. Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist . . . [W]here a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an

14

inference of deliberate indifference is unwarranted under our case law."). Also, when records show an inmate has been monitored, attended to, and treated often, the inmate cannot show deliberate indifference. *Wingfield v. Robinson*, No. 10-CV-01375, 2011 U.S. Dist. LEXIS 125825, at *32 (D. Colo. August 10) (missing subjective intent for deliberate indifference when defendants responded to grievances, examined plaintiff, and prescribed treatment more than fifteen times). Here, Plaintiff was consistently evaluated by Defendant and others. And, the undisputed evidence--Plaintiff's medical records--shows that Plaintiff received ongoing medical help from Defendant and others for each medical issue raised.

As noted, Plaintiff sues Defendant because he disagrees with treatment plans. But, an "informed judgment" as to appropriate treatment does not amount to deliberate indifference. *Supre v. Ricketts*, 792 F.2d 958, 963 (10th Cir. 1986). Here, even if Plaintiff could prove that alternative treatment was medically appropriate, Plaintiff still cannot meet his burden of showing Defendant was unreasonable in relying on his own judgment and test results, and administering treatment accordingly.

The undisputed material facts show Defendant was not deliberately indifferent to Plaintiff's medical treatment.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motions for Summary judgment are

**GRANTED**, (Doc. No. 33, 35). All claims are **DISMISSED WITH PREJUDICE**. This action

is **CLOSED**.

DATED this 30th day of March, 2021.

BY THE COURT:

_____
JUDGE CLARK WADDOUPS
United States District Court

16